UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

ROBERT M. MERRILL,

                    Plaintiff,

        v.

CROWN LIFE INSURANCE CO.,

                    Defendant.

NO:  13-CV-0110-TOR

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment (ECF Nos. 15 and 19), and Defendant's Motion to Strike Third Declaration of Robert Merrill (ECF No. 55) and Motion to Expedite (ECF No. 54). These matters were heard with oral argument on May 22, 2014.  Steven C. Lacy appeared on behalf of the Plaintiff.  Medora A. Marisseau appeared on behalf of Defendant.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 1

INTRODUCTION

Plaintiff sustained a fractured eye socket during a skiing accident in January 2011.  This injury caused him to experience double vision.  Surgery to repair the eye socket improved Plaintiff's vision, but did not correct it entirely.  Despite experiencing lingering vision problems, Plaintiff returned to his practice as an orthodontist in February.  By June, however, it became clear to Plaintiff that he could not competently place brackets on patients' teeth due to his impaired vision.  Plaintiff filed for total disability insurance benefits commencing on the date of his injury under three policies issued by Crown Life.  Plaintiff continued to perform less visually demanding tasks until November, at which time he sold his interest in the practice to his business partner and retired from the practice of orthodontics.

After performing a thorough claims investigation, Crown Life determined that Plaintiff was totally disabled—*i.e.*, "unable . . . to perform the material and substantial duties of [his] regular occupation"—as of the date he sold his practice.  With regard to the period that Plaintiff remained employed, however, Crown Life denied total disability coverage and awarded only proportional benefits.  The most significant result of this decision was that Plaintiff was denied "Professional Overhead Expense" benefits, payable in the maximum amount of $24,000 per month, for the nine months that he continued working.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 2

In the instant lawsuit, Plaintiff asserts claims for breach of contract, bad faith, and violations of the Washington Insurance Fair Conduct Act ("IFCA") and Washington Consumer Protection Act ("CPA") arising from Crown Life's denial of total disability coverage from January 2011 to November 2011. Plaintiff now moves for partial summary judgment[1] on his breach of contract and CPA claims. Crown Life has filed a cross-motion for summary judgment on all claims.

For the reasons discussed below, the Court concludes that Plaintiff is entitled to partial summary judgment on his breach of contract claim and a single CPA claim arising from a violation of WAC 284-30-330(7). Crown Life is entitled to summary judgment on all remaining CPA claims. Genuine issues of material fact preclude summary judgment on Plaintiff's bad faith and IFCA claims.

## FACTS

Plaintiff Robert Merrill ("Plaintiff") is a retired orthodontist who formerly practiced with his younger brother, Thomas Merrill, in Wenatchee, Washington. At all times relevant to this litigation, Plaintiff was insured under three disability insurance policies issued by Defendant Crown Life Insurance Co. ("Crown Life"). Two of these policies provide disability income coverage, while the third provides coverage for professional overhead expenses ("POE"). Both the disability income and POE policies have riders which provide for payment of partial benefits (termed

---

[1] Plaintiff has moved for summary judgment as to the issue of liability only.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 3

"income replacement benefits" and "proportionate expense benefits," respectively) in the event that the claimant experiences a loss of business income due to an injury.

On January 14, 2011, Plaintiff was involved in a skiing accident at Alta Ski Resort in Alta, Utah.  The accident resulted in a blowout fracture to Plaintiff's left eye socket and caused Plaintiff to experience double vision.  Plaintiff underwent surgery one week later to repair his eye socket and the muscles attached to his eye.  This surgery improved Plaintiff's double vision, but did not entirely correct it.

Plaintiff returned to his orthodontics practice in late February 2011.  Although he was still experiencing problems with double vision, Plaintiff was hopeful that his vision would improve over time.  Plaintiff continued to perform the same basic duties he had performed prior to his accident: devising treatment plans, installing braces on new patients, and making periodic adjustments to wires.

In May 2011, Plaintiff's brother began noticing problems with the quality of Plaintiff's work while attending to patients during follow-up visits.  Specifically, Plaintiff's brother noted that the brackets on several patients' teeth had been installed so far off the correct location that they needed to be removed and reinstalled.  He and several assistants also observed excessive amounts of glue around many brackets.  Plaintiff and his brother discussed these issues, and Plaintiff acknowledged that his vision problems were adversely affecting his work.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 4

The following month, the two partners agreed that Plaintiff's brother would assume sole responsibility for initial bracket installations and that Plaintiff would only perform tasks that required less visual acuity such as adjusting wires and removing braces at the conclusion of a patient's treatment.  Because this arrangement placed a significantly higher workload on Plaintiff's brother, the partners reduced Plaintiff's share of the partnership profits from one-half to one-third.

On June 10, 2011, Plaintiff filed claims for disability benefits under his three policies with Crown Life.  On his claim form, Plaintiff indicated that, as a result of double vision caused by his skiing accident, he was unable to do "[a]nything requiring precise visual acuity and three-dimensional perception such as placement of orthodontic braces on teeth, fine tooth positioning adjustments to wires, removal of excessive adhesive, accurate assessment of tooth positions, etc."  In a recorded statement taken on June 21, 2011, Plaintiff explained that he was applying for proportionate (as opposed to total) disability benefits and provided an overview of his reduced role within the practice.  Crown Life opened a claims investigation.

Unfortunately, Plaintiff continued to experience difficulties in his modified role.  On September 12, 2011, Plaintiff informed Crown Life that he could no longer competently practice as an orthodontist and that, as a result, he would be selling his interest in the practice.  He also advised Crown Life that he now

considered himself totally disabled and wished to modify his claims to reflect that fact:

> After reading [through] my policies and talking frankly with my family, I now recognize that I have been in denial about my ability to practice orthodontics and realize that I probably should have been filing a claim for full disability since I appear to be fully disabled . . . even though I have been trying to work.

> While I have been working at a reduced rate of pay, I believe that is mainly due to my partner's (my brother) kindness and generosity and his hope that my vision could be restored and I would be able to resume practice, and not due to my ability to contribute meaningfully to the income of the practice. I have really been working as a glorified assistant to my brother as far as the tasks I've been performing, since my vision isn't good enough to do the technical aspects of orthodontics that produce any significant income to the practice.

> \* \* \*

> Since I can't contribute to practice income as a partner and am not able to do my normal duties in the practice, this disability will trigger the involuntary sale/purchase clause of our partnership agreement. . . . I haven't been able to perform my normal duties since the accident. The practice is currently being appraised and sale documents are being prepared.

Plaintiff subsequently sold his interest in the business to his brother on November 1, 2011, and retired from the practice of orthodontics.

On November 16, 2011, Crown Life sent a field investigator to interview Plaintiff about his claims. After meeting with Plaintiff, Plaintiff's brother and several employees, the investigator prepared a narrative report outlining the status of the investigation and the work that still needed to be completed. Among the

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 6

items that needed to be completed was a review of Plaintiff's medical records by an independent ophthalmology expert and an independent medical examination.

On December 13, 2011, Crown Life advised Plaintiff that he did not qualify for total disability benefits from the date of his accident to the date he sold his business.  The company did, however, determine that Plaintiff qualified for payment of partial benefits under the "income replacement benefits" riders to his two disability income policies during that period.  Based upon that decision, Crown Life paid income replacement benefits for the months of April through November 2011, in the amount of $25,200 under the first policy and $9,000 under the second policy.[2]  In a letter explaining its decision, Crown Life also stated that it would continue to evaluate whether Plaintiff would be deemed totally disabled following the sale of his business.  With regard to Plaintiff's claim for professional overhead expense benefits, Crown Life explained that Plaintiff was not entitled to a full award of benefits because he was not totally disabled during the months that he remained employed.  Crown Life did, however, award Plaintiff two months of

---

[2] By operation of a 90-day "elimination period" in both policies, April was the first month for which Plaintiff was eligible to receive income replacement benefits.

proportionate expense benefits[3] in the total amount of $24,000, despite the fact that he could not conclusively establish a covered loss by virtue of the fact that he and his brother shared patients. Crown Life made this latter payment "in an effort to be as fair as possible" and "with the understanding that . . . [Plaintiff's] claim under this policy is ended and no further monthly benefit payments will be paid[.]"

On December 19, 2011, Plaintiff was seen by a strabismus[4] expert named Dr. Erin Herlihy in Seattle. During this visit, Dr. Herlihy completed an attending physician's statement which indicated that Plaintiff suffered from incomitant microstrabismus which limited his ability to "see in three dimensions and in minute detail." Dr. Herlihy explained that while Plaintiff's double vision had been mitigated to some degree by prism eyeglasses, it was unlikely that his visual acuity could be restored sufficiently to allow him to perform the duties of an orthodontist. Plaintiff forwarded these findings to Crown Life.

_____

[3] Proportionate expense benefits are payable when a claimant is only partially disabled and incurs a 20% or greater reduction in monthly gross revenue as a result of his or her injury.

[4] Strabismus is a "manifest lack of parallelism of the visual axes of the eyes." *Stedman's Medical Dictionary* (27th ed. 2000).

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 8

On February 28, 2012, Plaintiff submitted to an independent medical examination performed by Dr. Jeffrey Colburn, a strabismus specialist retained by another of Plaintiff's disability insurance carriers.  Dr. Colburn's findings were similar to those of Dr. Herlihy.  Specifically, Dr. Colburn concluded that Plaintiff had attained "maximum medical improvement," and that there were "[no] further treatments available . . . that would improve his vision to the point of returning to work as an orthodontist."  After obtaining a copy of Dr. Coburn's report on March 29, 2012, Plaintiff forwarded a copy to Crown Life.

By letter dated April 30, 2012, Crown Life advised Plaintiff that it had completed its claims investigation and had deemed Plaintiff totally disabled "[as of] November 2011 when you advised us you stopped working and sold your interest in your practice."  Plaintiff appealed this decision on May 16, 2012, arguing that he should have been deemed totally disabled as of the date of his injury rather than as of the date he sold his practice.  In support of this argument, Plaintiff explained that he had sold his practice because he became totally disabled rather than vice versa.  He further argued that "total disability" was an all-or-nothing proposition under the plain language of his policies; either he was capable of performing the "material and substantial duties of [his] occupation" or he was not.  Given that his level of impairment had remained unchanged after his surgery,

Plaintiff argued, deeming him totally disabled as of the date he sold his practice was entirely arbitrary.

Crown Life denied Plaintiff's appeal on July 3, 2012. Crown Life's denial letter stated, in relevant part, that Plaintiff did not qualify for total disability benefits under his disability income or professional overhead expense policies prior to the sale of his practice because he was performing the material and substantial duties of his occupation during that period:

> As you have advised us, you returned to work part-time in your occupation in February 2011 and continued working until you sold the practice in November 2011. Even though . . . you are claiming Total Disability during this period, under the terms of your policies, **since you were performing the material and substantial duties of your occupation and earning an income, you were not Totally Disabled under the terms of these policies during this period** and Total Disability benefits were not payable during this period. However, based upon the information provided, we are considering you as having been Totally Disabled from November 2011 forward.

With regard to the payment of disability income benefits, Crown Life explained:

> Because you were working in your occupation[,] we have paid 50% Income Replacement benefits under these policies from April 14, 2011 to September 14, 2011 (the minimum payable for the first six months of Income Replacement benefits, even though your actual loss of income was only about 24%). We also paid 100% Income Replacement benefits [equivalent to total disability benefits] from September 14, 2011 forward. Once it was determined that you were unable to work in your occupation, and you stopped performing [y]our occupational duties, we provided Total Disability benefits under your policies.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 10

With respect to professional overhead expense coverage, Crown Life reiterated that Plaintiff had not sustained a covered loss under the policy's proportionate expense benefit provision while he remained employed and was not entitled to any benefits after he sold his practice:

> [W]e considered Proportionate benefits under your professional overhead expense policy for 2011, since you were working in your occupation[] and therefore not eligible for Total Disability benefits[.] Based upon your income you did not incur a covered loss under th[is] provision[]. In November 2011 you sold your practice and . . . were no longer responsible for overhead expenses[.]  Therefore, no Total Disability benefits are payable under your overhead expense policy from November 2011 [forward].

Plaintiff subsequently filed the instant lawsuit on February 6, 2013, in Douglas County Superior Court.  Defendant removed the case to this Court on March 15, 2013, on diversity of citizenship grounds.

DISCUSSION

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific genuine issues of material fact which must be decided by a jury.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Only evidence which would be admissible at trial may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. Breach of Contract Claim**

The parties have filed cross-motions for summary judgment on Plaintiff's breach of contract claim. To prevail on a breach of contract claim under Washington law, a plaintiff must prove (1) the existence of a valid contract; (2) the breach of a duty imposed by a contract; and (3) damages resulting from the breach. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wash. App. 707, 712 (1995). Plaintiff seeks summary judgment only as to the first two elements of his claim; Crown Life seeks summary dismissal of the entire claim.

Plaintiff's theory of liability is that Crown Life erroneously denied total disability benefits from the date of his injury (January 14, 2011), to the date on

1   which he sold his practice (November 1, 2011).  Specifically, Plaintiff contends

2   that Crown Life was required to make its total disability determination based solely

3   upon his *ability* to perform the material and substantial duties of his occupation,

4   without regard to whether he remained employed.  ECF No. 15 at 6-7; ECF No. 41

5   at 4-5.  Because Crown Life denied benefits on the ground that he continued to

6   work and collect an income, Plaintiff argues, liability for breach of the insurance

7   contracts is conclusively established.

8          Having thoroughly reviewed the record, the Court concludes that Plaintiff is

9   entitled to summary judgment.  As Plaintiff correctly notes, the definition of "total

10  disability" focuses exclusively upon a claimant's ability to continue performing his

11  or her occupational duties: "Total Disability means that You are **unable**, due to

12  Injury or Sickness, to perform the material and substantial duties of Your regular

13  occupation."   ECF No. 20-2, Ex. 12-14 (emphasis added).   Under the plain

14  language of this definition, the fact that a claimant continues to work and collect an

15  income is not a permissible consideration; the only relevant inquiry is whether the

16  claimant remains physically capable of performing those duties which are material

17  and substantial to his or her regular occupation.

18         Crown Life asserts that Plaintiff was denied total disability benefits not

19  because he continued to show up for work and collect an income, but because he

20  was, in fact, performing the material and substantial duties of his occupation while

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 13

1    he remained employed.  *See* ECF No. 31 at 2 (arguing that Plaintiff "quite

2    successfully continued to perform the material and substantial duties of his

3    occupation" before he sold his practice).  The record contains conflicting evidence

4    on this score.  In its initial denial letter, Crown Life stated that it had deemed

5    Plaintiff totally disabled "from November 2011 *when you advised us you stopped*

6    *working* and sold your interest in your practice."  ECF No. 20-3, Ex. 30 (emphasis

7    added).  This explanation suggests that Crown Life based its decision solely upon

8    the fact that Plaintiff continued to collect an income.  Crown Life's denial of

9    Plaintiff's appeal, on the other hand, references continued performance of

10    Plaintiff's material and substantial duties: "*[S]ince you were performing the*

11    *material and substantial duties of your occupation* and earning an income, you

12    were not Totally Disabled under the terms of these policies."  ECF No. 20-3, Ex.

13    31 (emphasis added).  This explanation tends to support Crown Life's present

14    argument that coverage was denied on the basis of Plaintiff's demonstrated ability

15    to continue performing his material and substantial duties.

16        Regardless of this conflicting evidence, Crown Life cannot withstand

17    summary judgment.  Crown Life admits, as it must, that it deemed Plaintiff totally

18    disabled—that is, unable to perform the material and substantial duties of his

19    regular occupation—as of November 1, 2011.  As Plaintiff persuasively argues,

20    this decision cannot be reconciled with the company's determination that Plaintiff

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 14

was not totally disabled *prior* to that date.  Critically, the record is devoid of any evidence to support a finding that Plaintiff's ability to perform the material and substantial duties of his occupation changed on November 1, 2011; as a matter of undisputed fact, Plaintiff's degree of impairment remained static from the moment he returned to work to the moment he sold his practice.  In light of this undisputed evidence, a rational fact finder could only conclude that Crown Life's decision to deny total disability coverage from January 14, 2011, to November 1, 2011, was divorced from the plain language of the policies.

Crown Life has gone to great lengths in an effort to establish that Plaintiff was, in fact, capable of performing his material and substantial duties during this period.  For example, Crown Life argues that Plaintiff continued to perform important duties such as adjusting bands and removing braces, that he did not experience a substantial decline in income, and that there is no documentation of his bracket placements being deficient.  ECF No. 31 at 3-12; ECF No. 19 at 5-12.  Crown Life also argues that the medical evidence reveals that Plaintiff could have corrected any performance issues caused by his double vision by wearing prism glasses or surgical loupes.  ECF No. 31 at 12-15; ECF No. 19 at 12-15.  But these arguments miss the mark.  Again, nothing about Plaintiff's *ability* to perform his material and substantial duties changed on November 1, 2011.  Crown Life agrees that Plaintiff was totally disabled on that date, and concedes that he remains totally

disabled today.  Crown Life simply cannot have it both ways on this issue.  On this undisputed record, if Plaintiff was totally disabled on November 1, 2011, then he was totally disabled from the moment he returned to work after his accident.

At the motion hearing, defense counsel argued that it would be "anathema" to award total disability benefits to a claimant who remains employed and continues to earn an income after being injured.  While this argument has some intuitive appeal, it is not supported by the plain language of the policies.  Crown Life would apparently have the Court interpret the policies to state that a claimant who remains employed and continues to earn an income cannot be considered "totally disabled."  But the policies say no such thing.  Instead, the policies define total disability strictly in terms of whether the claimant is capable of performing the material and substantial duties of his or her regular occupation.  There is no carve-out for claimants who continue to work, perform some of the duties of his or her regular occupation, and earn an income.  If Crown Life wishes to avoid paying total disability benefits to claimants in this circumstance, it can amend its policy language accordingly.  As the policies are currently written, however, a claimant who meets the definition of total disability is entitled to total disability benefits regardless of whether he or she continues to receive a paycheck.

Plaintiff is entitled to judgment as a matter of law.  Because Plaintiff moved for summary judgment only on the issue of liability, the issue of damages will be decided at the upcoming bench trial.

**B. Bad Faith Claim**

Insurers in Washington have a duty to act in good faith and to deal fairly with their insureds.  *Smith v. Safeco Ins. Co.,* 150 Wash.2d 478, 484 (2003); RCW 48.01.030 ("The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters.").  A violation of this duty gives rise to a common law tort cause of action for bad faith.  *Smith*, 150 Wash.2d at 484.

Bad faith claims require the same evidentiary showing as other torts: duty, breach, causation, and damages.  *Id*. at 485.  In order to prove that an insurer acted in bad faith, the insured must demonstrate that the breach was "unreasonable, frivolous, or unfounded."  *Id.* at 484.  As the Washington Supreme Court explained in *Smith*, the test is not whether the insurer's interpretation of an insurance policy was correct, but whether its conduct was reasonable under the circumstances:

> The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based on reasonable grounds.  If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate.  If the insurer can point to a reasonable

1
2

> basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified.

3   150 Wash.2d at 486 (citation omitted).

4         Crown Life seeks summary judgment on Plaintiff's bad faith claim, arguing

5   that no reasonable fact finder could conclude that it denied Plaintiff's claims for

6   total disability benefits in bad faith.  The Court disagrees.  Although Plaintiff has

7   not clearly articulated the basis for his bad faith claim, he appears to be claiming

8   that Crown Life made a "self-serving" decision to deny total disability coverage

9   from January 2011 to November 2011 in order to avoid paying professional

10  overhead expense benefits.  ECF No. 22 at 5, 12-13.  When viewed in the light

11  most favorable to Plaintiff, the evidence supports this contention.  As Plaintiff

12  correctly notes, Crown Life's decision to deny total disability coverage from

13  January 2011 through November 2011 had the effect of relieving the company of

14  any obligation to pay professional overhead expense benefits (though not

15  necessarily from paying proportionate expense benefits under Plaintiff's

16  proportionate expense rider).  By the Court's calculation, the maximum value of

17  these benefits, accounting for a 30-day elimination period and the sale of the

18
19
20

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 18

business on November 1, 2011, is approximately $204,000.[5]  This substantial sum of money, when considered in conjunction with Crown Life's perplexing refusal to consider Plaintiff totally disabled until after he sold the business, could support a finding that Crown Life unreasonably placed its own financial interests above the Plaintiff's interests.

The Court acknowledges that Crown Life did pay $24,000 in proportionate expense benefits for the months of September and October 2011, despite the fact that Plaintiff could not conclusively establish a covered loss during those months. ECF No. 20-2, Ex. 17.  While this payment cuts against a finding that Crown Life acted unreasonably, the Court is unable to conclude that "reasonable minds could not differ that [Crown Life's] denial of coverage was based on reasonable grounds."  *Smith*, 150 Wash.2d at 486.  In the final analysis, a reasonable fact finder could conclude that Crown Life had no reasonable basis for partially denying coverage after it decided that Plaintiff was totally disabled as of November 1, 2011.  Accordingly, Crown Life's motion for summary judgment on Plaintiff's bad faith claim is denied.

---

[5] Maximum Monthly Benefit of $24,000 × 8.5 months (Feb. 14, 2011 to November 1, 2011) = $204,000.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 19

**C. Insurance Fair Conduct Act Claim**

Crown Life has also moved for summary judgment on Plaintiff's claim under the Washington Insurance Fair Conduct Act ("IFCA"). IFCA applies exclusively to first-party insurance contracts. The statute creates a private right of action against an insurer which (1) "unreasonably denie[s] a claim for coverage or payment of benefits"; and/or (2) violates one of several claims handling regulations promulgated by the Washington State Office of the Insurance Commissioner. RCW 48.30.015(1), (5). A plaintiff who prevails on an IFCA claim is entitled to recover up to treble damages, reasonable attorney's fees and litigation costs. RCW 48.30.015(2), (3).

Plaintiff has indicated that his IFCA claim is grounded in an allegedly unreasonable denial of coverage or payment of benefits rather than alleged violations of the Insurance Commissioner's claims handling regulations.[6] *See* ECF No. 22 at 12 ("Both the common law bad faith claim and the RCW 48.30.015 claim turn on the factual question of whether [Crown Life's] denial of [Plaintiff's] claim for total disability benefits . . . was unreasonable."). Crown Life's motion

---

[6] Plaintiff has chosen to bring his claims for violations of the claims handling regulations under the CPA rather than IFCA.

for summary judgment on this claim is denied for the same reasons discussed above in conjunction with Plaintiff's common law bad faith claim.

**D. Consumer Protection Act Claims**

The parties have filed cross-motions for summary judgment on Plaintiff's CPA claims.  To prevail on CPA claim, a plaintiff must demonstrate: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) that injured the plaintiff's business or property; and (5) that the unfair or deceptive act caused his or her injury.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 784-85 (1986).   Violations of the insurance claims handling regulations promulgated by the Washington State Office of the Insurance Commissioner constitute *per se* CPA violations, meaning that the first three elements of a CPA claim are automatically satisfied.   *Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wash.2d 751, 764 (2002).

Plaintiff contends that Crown Life violated eight of the prohibited claims handling practices set forth in WAC 284-30-330.  ECF No. 15 at 8-17.  The Court will address each of these alleged violations in turn.

1. Misrepresenting pertinent facts or insurance policy provisions – WAC 284-30-330(1)

This alleged violation is based upon Crown Life's statement in a letter dated December 31, 2011, that Plaintiff "[is] claiming Total Disability as of November

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 21

14, 2011." ECF No. 15 at 9.  Although this was not an accurate characterization of Plaintiff's claim, Crown Life ultimately corrected the error and evaluated the claim based upon Plaintiff's alleged total disability onset date of January 14, 2011.  *See* ECF No. 20-3, Ex. 31.  Given that Plaintiff was not harmed by Crown Life's misstatement, this alleged violation cannot form the basis of a CPA claim.

> 2. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies – WAC 284-30-330(2)

This alleged violation is based upon Crown Life's four-month delay in providing a coverage decision after receiving Plaintiff's medical records from Dr. Herlihy in mid-December 2011.  ECF No. 15 at 10-11.  The record firmly establishes that this delay was not unreasonable.  Contrary to Plaintiff's assertions, the medical records from Dr. Herlihy did not provide Crown Life with all of the information it needed to evaluate his claims.  As of the date it received these records, Crown Life was still contemplating requiring Plaintiff to submit to an independent medical examination.  The issue of whether such an examination would be required was not resolved until Plaintiff furnished a report of an independent medical examination commissioned by a different carrier on March 29, 2012.  Crown Life subsequently rendered a coverage decision on April 30, 2012.  This constituted a reasonably prompt response to Plaintiff's communication

as a matter of law.  Accordingly, this alleged violation cannot form the basis of a CPA claim.

3. <u>Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies – WAC 284-30-330(3)</u>

This alleged violation is based upon Crown Life's failure to "adopt or implement a claims manual, any kind of checklist, or any standards for the prompt investigation and resolution of claims arising under disability policies."  ECF No. 15 at 11.  Plaintiff has offered no authority for the proposition that an insurer must adopt a claims manual or create a "checklist" to satisfy this regulation.  The record reflects that Crown Life maintained a detailed claims journal which was regularly reviewed by the assigned claims manager's supervisor.  ECF No. 20-2, Ex. 16. The record further reflects that Crown Life's claims investigation was performed reasonably promptly in view of the complexity of the claims and the nature of Plaintiff's impairment.  This alleged violation cannot serve as the basis of a CPA claim.

4. <u>Failing to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted – WAC 284-30-330(5)</u>

This alleged violation cannot form the basis of a CPA claim for the reasons set forth above in conjunction with the alleged violation of WAC 284-30-330(2).

5. <u>Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear – WAC 284-30-330(6)</u>

Plaintiff contends that Crown Life's liability to pay total disability benefits became reasonably clear in mid-December 2011, after he provided additional medical records from Dr. Herlihy. ECF No. 15 at 13. Again, Dr. Herlihy's records did not provide all of the information that Crown Life needed to evaluate Plaintiff's claims. Until Plaintiff provided the report of the independent medical examination on March 29, 2011, liability did not become reasonably clear. This alleged violation cannot form the basis of a CPA claim.

6. <u>Compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings – WAC 284-30-330(7)</u>

Plaintiff asserts that Crown Life violated WAC 284-30-330(7) by forcing him to initiate the instant litigation in order to recover the full amount of benefits owing to him. ECF No. 15 at 13-14. Crown Life's only response to this assertion is that there was no violation because Plaintiff is not entitled to total disability

benefits from January 14, 2011 to November 1, 2011.  ECF No. 31 at 20.  As discussed above, Plaintiff *is* entitled to total disability benefits for this period. Given that Plaintiff was forced to file a lawsuit to recover the full benefits to which he is entitled—a sum that is substantially higher than the amount offered by Crown Life—Crown Life violated this regulation.

Given that questions of material fact remain concerning the reasonableness of Crown Life's conduct, however, Plaintiff is not entitled to summary judgment. As the Washington Court of Appeals explained in *American Manufacturers Mutual Insurance Co. v. Osborn*, reasonableness is a defense to a CPA claim premised on a violation of WAC 284-30-330(7) because RCW 19.86.920 imports a reasonableness standard into the CPA as a whole:

> It is, however, the intent of the legislature that *this act shall not be construed to prohibit acts or practices which are reasonable* in relation to the development and preservation of business or which are not injurious to the public interest, nor be construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se.

104 Wash. App. 686, 699 (2001) (emphasis in original); *see also Anderson v. State Farm Mut. Ins. Co.*, 101 Wash. App. 323, 335 (2000) (holding that a "reasonable basis to dispute liability" is a valid defense to a CPA claim based upon a violation of WAC 284-30-330(7)).  Accordingly, this claim must proceed to trial.

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 25

7. <u>Delaying the investigation or payment of claims by requiring a first party</u> <u>claimant or his or her physician to submit a preliminary claim report and</u> <u>then requiring subsequent submissions which contain substantially the</u> <u>same information – WAC 284-30-330(11)</u>

This alleged violation is based upon Crown Life's decision to pursue an independent medical examination after receiving Plaintiff's medical records from Dr. Herlihy in mid-December 2011.  ECF No. 15 at 15.  According to Plaintiff, all information requested and received by Crown Life thereafter was "cumulative" of the information previously submitted.  ECF No. 15 at 15.  This argument is unavailing.  Although the report of the independent medical examination furnished to Crown Life on March 29, 2011, *confirmed* Dr. Herlihy's assessment, it was not "cumulative."  Crown Life had a contractual right to require Plaintiff to submit to an independent medical examination, and its decision to exercise this right did not violate WAC 284-30-330(11).  Accordingly, this alleged violation cannot form the basis of a CPA claim.

8. <u>Failing to promptly provide a reasonable explanation of the basis in the</u> <u>insurance policy in relation to the facts or applicable law for denial of a</u> <u>claim or for the offer of a compromise settlement – WAC 284-30-</u> <u>330(13)</u>

1    This alleged violation cannot form the basis of a CPA claim for the same

2    reasons set forth above in conjunction with the alleged violations of WAC 284-30-

3    330(2), (5) and (6).  Crown Life promptly provided a coverage decision upon

4    receiving all of the information it required to evaluate Plaintiff's claim.

5    **E. Defendant's Motion to Strike Third Declaration of Robert Merrill (ECF**

6        **No. 55)**

7        Crown Life has moved to strike the third declaration of Robert Merrill (ECF

8    No. 42), filed on May 2, 2014.  In support of the motion, Crown Life argues that

9    the declaration contains (1) medical opinions and diagnoses which Plaintiff is not

10   qualified to offer; and (2) speculative testimony which is not grounded in personal

11   knowledge.  The Court rejects these arguments.  Although Plaintiff's declaration

12   does reference a medical diagnosis ("incomitant strabismus"), the focus of his

13   testimony is on describing the nature of the vision problems he experiences.  While

14   Plaintiff may lack the expertise to offer a formal medical diagnosis of his own

15   impairment, he is certainly qualified to describe what he sees through his own

16   eyes.  Similarly, Plaintiff's testimony about orthodontic work that was redone by

17   his brother is grounded in personal knowledge.  The Court has fully considered this

18   evidence in reaching the rulings above.

19       Crown Life asks the Court to consider the declaration of Dr. Jonathan Trobe

20   (ECF No. 57), filed in response to the third declaration of Robert Merrill.  As this

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 27

filing was made within the timeframe established for disclosure of expert witness reports in the Court's amended scheduling order (ECF No. 14), the request is granted.  The Court has fully considered Dr. Trobe's declaration.

**IT IS HEREBY ORDERED:**

1.  Defendant's Motion to Expedite (ECF No. 54) is **GRANTED**.

2.  Defendant's Motion to Strike (ECF No. 55) is **DENIED**.

3.  Plaintiff's Motion for Partial Summary Judgment (ECF No. 15) is **GRANTED in part** and **DENIED in part**.  Plaintiff is granted summary judgment on the issue of <u>liability only</u> as to his breach of contract claim.  The motion is denied in all other respects.

4.  Defendant's Motion for Summary Judgment (ECF No. 19) is **GRANTED in part** and **DENIED in part**.  The motion is denied as to Plaintiff's bad faith and IFCA claims.  The motion is granted as to Plaintiff's CPA claims, **except** the claim arising from Defendant's violation of WAC 284-30-330(7).

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** May 23, 2014.



THOMAS O. RICE
United States District Judge

ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ~ 28